

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-11-00201-CR

---

JAMES EDMOND LUND, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. CR-10-23442

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

After a jury trial, James Edmond Lund was convicted of aggravated assault with a deadly weapon[1] and sentenced to five years' incarceration.[2]  On appeal, Lund complains of the admission of a witness statement, in violation of the Texas Rules of Evidence.   Although we find (1) it was proper to use the statement for impeachment, (2) the trial court erred by failing to submit a timely and proper limiting instruction relative to the statement, and (3) the trial court erred by admitting the witness statement for all purposes, such error did not result in harm.   We affirm the judgment of the trial court.

## I.    Background

Nellie Follis and Lund lived together in a romantic relationship.   In May 2010, the couple had a "pretty good argument," after which Follis stayed with her daughter for a few days.   During the separation, Follis and Lund met at the American Legion Hall in Bonham.   The two left the Legion Hall and returned to their motor home at the Rustic RV Park.   While there, Follis received a call from her daughter, Heather Roskowske, checking to ensure that all was well.   Thereafter, Follis and Lund began to argue, at which time Lund retrieved a black revolver, waved it around, placed it in Follis' face, and threatened to kill her.   In a second telephone call from Roskowske,

---

[1]Tex. Penal Code Ann. § 22.02(a)(2) (West 2011).

[2]The indictment charged that Lund:

> On or about June 2, 2010, did then and there intentionally or knowingly threaten Nellie Follis with imminent bodily injury by threatening to kill her, and did then and there use or exhibit a deadly weapon, to-wit:   a firearm, during the commission of said assault.

2

Follis sounded breathless, frightened, and desperate as she told Roskowske that Lund had a gun. Roskowske immediately contacted the Fannin County Sheriff's Department with a report that Lund threatened Follis with a gun. When Deputy Kara Scott arrived on the scene, she observed Lund coming from the back, south side of the trailer. A seemingly intoxicated Lund was detained in order to conduct an investigation of the alleged incident.

Inside the trailer, a frightened and disheveled Follis spoke with Scott and reported that Lund put a gun in her face and told her he was going to kill her. A fully loaded black revolver, located in the freezer on the south side of the trailer—in the area where Lund was walking when the deputy arrived, was identified by Follis as the gun Lund used to threaten her life. Lund was arrested and placed in custody.

Deputy Jacob Barker with the Fannin County Sheriff's Department arrived to assist Scott and asked Follis to fill out an assault victim statement. Follis completed the statement and Barker placed it in his patrol vehicle. Barker also provided Follis with a second form captioned "Fannin County Sheriff's Office Voluntary Statement," instructed her on how to fill it out, and asked that Follis complete and return the form to the sheriff's office.[3]

Prior to trial, Follis moved back to the RV park with Lund when they resumed their former relationship. Follis also filed an affidavit of nonprosecution, asking that the case against Lund be dismissed. On the day of trial, Lund and Follis shared a ride to court.

---

[3] The record is unclear as to the manner in which the completed voluntary statement was returned or to whom it was given.

3

At trial, when Follis testified that she could not recall what she and Lund argued about, the State offered Follis the voluntary statement, which she acknowledged having written, to refresh her memory regarding the reason for the argument. Follis testified the document did not refresh her memory. She explained that she had been hospitalized only days before the incident and was taking strong medication. Consequently, Follis could not recall much about the argument.

Follis testified that she signed the document in question; she also concedes the listing of her age, birth date, and social security number is in her handwriting. Follis further testified that she wrote "bits and pieces" of the narrative, but denied writing the entirety of the narrative.[4] Follis does not know whose writing is on the document—in addition to hers—but indicated the statement remained on the coffee table in her daughter's home for several days, and it is possible someone else may have written on it.[5] In subsequent testimony, Follis admitted to writing that portion of the voluntary statement that "[Lund] pulled his .38 out and stuck it under my nose in my face and said he'd kill me." The trial court admitted the voluntary statement over Lund's objections. On

---

[4]While the record is not entirely clear on which part of the narrative Follis contends she did write versus those portions she disclaims, it is apparent that a portion of the narrative is printed, and the remainder is written in cursive.

[5]The cursive portion of the narrative states:

> We went out to the motor home to talk and he immediately started about my kids and me again. Then he pulled his .38 out and stuck it under my nose in my face and said he'd kill me. My oldest son and daughter in law drove up about then and my daughter called. Jim grabbed the phone and closed it as my daughter was wanting to know what was going on and if I was O.K. My daughter called my daughter-in-law & Son and they told her what was going on. She called the County Sherrif [sic]. When they arrive [sic] they were informed that he had pointed his gun at me and threatened to kill me. He was arrested and I left with my son & family.
>
> Nellie Follis

4

appeal, Lund complains of trial court error in so doing.

## II.     Admission of Voluntary Statement

### A.     The Statement Was Authenticated and Properly Admitted as a Prior Inconsistent Statement Under Rule 613(a)

In point of error number one, Lund complains the trial court erred in admitting the voluntary statement because (1) it was not a prior inconsistent statement under Rule 613(a) of the Texas Rules of Evidence, and (2) the statement was not properly authenticated in accordance with Rule 901 of the Texas Rules of Evidence. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). If the trial court's decision to admit evidence is within the zone of reasonable disagreement, the trial court has not abused its discretion, and we must defer to that decision. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

During direct examination, Follis testified she could not recall what she and Lund argued about. The State then provided Follis with the voluntary statement:

> Q:     Nellie, I'd like you to take a moment, ask you to look at that document and tell – tell me if you recognize it.
>
> A:     Yeah.
>
> Q:     Is that your handwriting?
>
> A:     Yeah.
>
> Q:     Okay.

A:      Some of it is.

Follis was then permitted to read the document, but testified that it failed to refresh her recollection regarding the incident.   She explained that at the time of the incident, she was just out of the hospital and was on medication that impaired her recollection.   Follis further testified:

Q:      [I]t's got your name.   Is that in your handwriting?

A.      Yes.

Q.      Okay.   This part that says your age, is that in your handwriting?

A:      It looks like it.

Q.      Okay.   Birth date?

A.      Looks like it, yes.

Q:      Address, social --

A:      Yes.

Q:      -- is that your handwriting?   Phone number, is that your handwriting?

A:      Some of it looks like it is.   Some of it don't.

. . . .

Q:      So, you were asked to fill out this statement for law enforcement. Correct?

A:      Yes.

After this series of questions, the State began to read from the narrative portion of the

statement over repeated objections from Lund, which were overruled. Follis testified that she did not remember "the biggest part" of what was read to her. Follis agreed to portions of the statement, but failed to recall others. She did recall her visit with Lund at the motor home, and "the law coming in." Follis was able to recall a telephone call from Roskowske and that she and Lund may have gotten into an argument. Follis was asked:

> Q: During that argument, did he walk out into the bedroom in that motor home, pull his brother's police-issued .38, put it under your nose, and tell you he's so mad at you he could kill you?

> A: He went and got it to put it up, I think but I don't -- no.

> Q: So, that didn't happen.

> A: No. It was in the air. He had it like that and I probably misunderstood.

> Q: Oh, okay. Did he say he could kill you or would kill you?

> A: We both say that all the time.

> Q: Okay. So, he had a gun, he was waving it around, and he said he'd kill you.

> A: He may have. I don't remember.

Thereafter, Follis indicated that she did not recall talking with her daughter. She was able to recall that when Lund found out "the law" was coming, he walked outside. Follis claims she did not fabricate the statement; rather, Roskowske and her daughter-in-law told her what happened. Follis went on to testify that she was currently living with Lund and that he drove her

7

to court that day. The State then moved to introduce the voluntary statement into evidence.

Counsel for Lund objected:

> [Defense Counsel]: Objection, failure to be properly authenticated. The witness testified it was not all in her testimony, she testified it did not refresh her recollection, she could not identify or did not identify who had written it. It constitutes hearsay, has not been properly authenticated as to the signature of the person and the witness who allegedly signed it. The witness could not even remember the date and disputes the date. For those reasons, we object, Your Honor.

> THE COURT: What rule is it being offered under, Mr. Moss?

> [State's Attorney]: Your Honor, it's being offered as impeachment evidence, as an exception to the hearsay -- actually as an exclusion to the hearsay rule. It is a prior inconsistent statement with her testimony today. She has indicated that even after reading it, her recollection cannot be refreshed and I think it is appropriate under those rules.

> THE COURT: The objection's overruled.

Lund complains on appeal that the statement does not qualify under Rule 613(a) of the Texas Rules of Evidence[6] as a prior inconsistent statement. To lay the foundation required by Rule 613(a), an appellant must establish (1) "identification of the statement (by time, place, and

---

[6]This rule provides:

> In examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted. This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2).

TEX. R. EVID. 613(a).

8

person)," (2) "a summary of the contents," and (3) "a denial by the witness as to what the statement contains." *See Ferguson v. State*, 97 S.W.3d 293, 296 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Here, these foundational requirements were satisfied. Follis identified the statement, she was permitted to read it, and she denied or failed to recall portions of the statement incriminating to Lund. "The rule of admissibility of evidence of prior inconsistent statements should be liberally construed and the trial judge should have discretion to receive any evidence which gives promise of exposing falsehood." *Aranda v. State*, 736 S.W.2d 702, 707 (Tex. Crim. App. 1987); *Joseph v. State*, 960 S.W.2d 363, 366 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd).

Next, Lund complains that the voluntary statement should not have been admitted because it was not properly authenticated under Rule 901 of the Texas Rules of Evidence.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Rule 901(b) provides a nonexclusive list of methods for authenticating evidence. *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). For example, evidence can be authenticated by the testimony of a witness with knowledge. TEX. R. EVID. 901(b)(1). The rule further provides that evidence can be authenticated by "contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." TEX. R. EVID. 901(b)(4).

9

Here, Follis testified that (1) she recognized the voluntary statement, (2) she was asked to fill it out by law enforcement, (3) her name, address, and social security number, as they appeared on the statement, were in her handwriting, and (4) some of the narrative portion of the statement was in her handwriting. In addition, the content and substance of the statement, when taken in conjunction with the circumstances relating to the relationship between Lund and Follis, were sufficient to authenticate the statement. The statement was given shortly after the argument and incident for which Lund was arrested. Later, Lund and Follis reconciled and Follis signed an affidavit of nonprosecution. Follis testified she could not remember much of what was in the statement, and stated that some of the information was written by a third party or was provided to her by a third party. However, Follis also testified that she and Lund probably argued, that Lund had a gun, and that Lund was waving the gun around. She conceded "the law" was called, but failed to indicate who called for help or how such person had sufficient information regarding the incident to call for help. The trial court could reasonably conclude the statement was made by Follis, given its content and substance, especially when taken together with the circumstance of the couple's reconciliation.

Lund contends, however, that even if the voluntary statement was properly admitted as a prior inconsistent statement, it was admissible only for impeachment, and not as substantive evidence.[7] When the request was made to publish the statement to the jury, Lund requested an

---

[7]When a witness at a trial or hearing testifies and is subject to cross-examination concerning a prior statement, that statement is not hearsay if it is

instruction "that the evidence can be considered only for the purposes of testing the credibility of the witness based upon her testimony and not for the proof of the matters asserted therein." The State responded that the statement is not hearsay, and therefore could be considered as direct evidence of guilt. The trial court denied the request for a limiting instruction.

## B. The Statement Was Admissible Solely for Impeachment

In his second and third points of error, Lund complains of trial court error in failing to give a limiting instruction on the use of the voluntary witness statement, and thus erred in admitting the statement for all purposes.

A witness' prior inconsistent statement is admissible for impeachment, but as substantive evidence of the truth of the matter asserted, it is inadmissible unless a hearsay exception applies. Thus, when such a statement is offered for impeachment, it is admitted only to show the witness has previously made an inconsistent statement and, for that purpose, the evidence is not hearsay. TEX. R. EVID. 613(a), 2A Steven Goode, et al., *Texas Practice Series: Courtroom Handbook on Texas Evidence* p. 521 (2011); *see Miranda v. State*, 813 S.W.2d 724, 735 (Tex. App.—San Antonio 1991, pet. ref'd). But if the witness' own out-of- court statement is offered as substantive evidence of facts at issue in trial, the statement is inadmissible unless it is excepted

inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding except a grand jury proceeding in a criminal case, or in a deposition.

TEX. R. EVID. 801(e)(1)(A). This rule is not applicable, because the prior statement was not given under oath subject to the penalty of perjury.

11

from the hearsay rule. Rule 105 of the Texas Rules of Evidence provides that when evidence is admissible for one purpose, but not admissible for another, the court shall, upon request, restrict the evidence to its proper scope and instruct the jury accordingly. TEX. R. EVID. 105. Lund maintains the statement was hearsay,[8] and thus a limiting instruction was required. The trial court admitted the statement for all purposes, but failed to articulate the basis for its ruling. If the trial court's decision is correct on any theory of law applicable to the case, it will be sustained. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). This is especially true with regard to the admission of evidence. *Id.*; *State v. Esparza*, 353 S.W.3d 276, 282 (Tex. App.—El Paso 2011, pet. granted).

Based on Rule 803(5), the State urges that the prior statement of Follis was an exception to the hearsay rule as a recorded recollection and, therefore, was admissible as substantive evidence. TEX. R. EVID. 803(5). Lund maintains this exception cannot be met.[9] The State, as the proponent of the evidence, had the burden of showing that Lund's statement was admissible under

---

[8]"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d).

[9]Rule 803(5) defines a recorded recollection as:

> A memorandum or record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the document's trustworthiness. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

TEX. R. EVID. 803(5).

12

the hearsay exception.  *See Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994).

In order to qualify as a recorded recollection, four elements must be satisfied:  (1) the witness must have firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum.  *Johnson v. State*, 967 S.W.2d 410, 416 (Tex. Crim. App. 1998).

Because Follis testified that her memory of the events set forth in the statement was not altogether clear, Lund does not readily contest the third requirement for admissibility as set forth in *Johnson*.  Instead, Lund complains the second and fourth prongs of the test for admission have not been met.

The second prong of the test for admissibility requires that the statement be an original memorandum made at or near the time of the event while the witness was able to clearly and accurately recall the event.  Nothing in the record reflects that the original statement was introduced into evidence.  Even so, Follis reviewed the statement and testified that it was one Deputy Barker asked her to fill out, and it contained her handwriting.  The trial court had the discretion to determine that statement in question was the original statement.  Moreover, the record establishes the incident occurred on June 2, 2010.  The statement is dated June 3, 2010. Even though Follis testified the statement remained in Roskowske's home for several days, the

13

trial court had the discretion to determine that it was made at or near the time of the event.

We cannot conclude, however, that the State met the predicate for admissibility because Follis did not vouch for the accuracy of the statement. Follis conceded that "some" of the writing on the statement was hers. Prior to the admission of the statement, Follis testified that the statement did not refresh her recollection due to medication she was taking at that time. Moreover, Follis did not remember much of what was in the statement, and further claimed that portions of the statement were not in her handwriting. Therefore, the State failed to meet the fourth criterion for admissibility as a past recollection recorded. *See id.*[10] The request for a limiting instruction should therefore have been granted, advising the jury the statement was admitted solely for purposes of testing Follis' credibility, and not for the truth of the matters asserted.

### C.    Error in the Admission of the Voluntary Statement Was Harmless

In his final point of error, Lund claims the trial court "fell into harmful error" in overruling all hearsay objections lodged to the reading by the prosecution of the voluntary statement. Lund relies on *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003), in support of this contention (trial court's decision to admit or exclude hearsay will not be reversed absent clear abuse of discretion). Here, the trial court abused its discretion in admitting the voluntary statement for all purposes. This determination does not, however, equate with a finding of harmful error.

---

[10]Further, if a recorded recollection is admissible, it may only be read into evidence, "but may not itself be received as an exhibit unless offered by an adverse party." TEX. R. EVID. 803(5).

14

The erroneous admission of evidence resulting from a violation of evidentiary rules is nonconstitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Nonconstitutional error will not result in reversal if, after examination of the record as a whole, the appellate court has fair assurance the error did not influence the jury or influenced the jury only slightly. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001); *see* TEX. R. APP. P. 44.2(b) (nonconstitutional error that does not affect appellant's substantial rights must be disregarded). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King*, 953 S.W.2d at 271; *Paeilla v. State*, 278 S.W.3d 98, 102 (Tex. App.—Texarkana 2009, pet. ref'd). Moreover, "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the evidence was introduced by the defendant or the State." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Land v. State*, 291 S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref'd) (admission of inadmissible evidence harmless where it "comes in elsewhere without objection") (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999)).

A review of the record as a whole indicates the error had a slight effect, if any, on the decision of the jury. The properly admitted testimony of Roskowske established that after Lund and Follis separated, Roskowske drove Follis to the American Legion Hall where Lund's vehicle was parked. Further, Roskowske testified that she spoke to her mother on the telephone later that

15

same day. Follis stated in an alarmed tone that Lund had a gun. When law enforcement arrived, Lund was seen walking from the back of the trailer where the black revolver was later located.

Follis testified the couple had an argument, and they were separated prior to the incident. She testified to her visit with Lund at the motor home, and "the law coming in." Follis testified that she received a telephone call from Roskowske on the day of the incident and that she and Lund may have gotten into an argument. Follis further testified that Lund had a gun and was waving it around. Finally, Follis recanted a portion of her previous trial testimony when she admitted to authorship of the sentence in the voluntary statement indicating that Lund "pulled his .38 out and stuck it under my nose in my face and said he'd kill me."

Scott testified that Follis told her, at the time of the investigation, that Lund put a gun to her face and told her he was going to kill her. In his own defense, Lund introduced a different written statement (assault victim statement) given to Deputy Baker by Follis on June 2, 2010, completed by Follis before Baker left the scene. This statement consists of a series of questions for which Follis provided answers. Follis identified this document and stated that she signed it. This statement reports that Lund "waved a .38 P.S. in front of me & threatened to kill me." When asked if any part of the assault victim statement was untrue, Follis indicated that the only untrue portion of that statement was Lund's threat to kill her son-in-law if he came to the motor home.

The foregoing testimony establishes the same, essential facts as those set forth in the voluntary witness statement. Because we conclude the trial court's error in the admission of the

16

voluntary witness statement, in the absence of a limiting instruction, had only slight influence, if any, on the jury, such error was harmless.

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted: April 30, 2012
Date Decided: May 1, 2012

Publish