**Opinion issued May 15, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00589-CR

————————————

**JOSEPH KEVIN VILLYARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law**
**Liberty County, Texas[1]**
**Trial Court Case No. 98909**

---

**MEMORANDUM OPINION**

---

[1]    Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this Court. *See* Misc. Docket No. 13–9097 (Tex. Jun. 27, 2013); *see also* TEX. GOV'T CODE ANN. §73.001 (West 2005) (authorizing transfer of cases).

This is a domestic-assault case. Appellant Joseph Kevin Villyard was convicted by a jury and sentenced by the trial court to 180 days' confinement. We affirm.

## TRIAL TESTIMONY

Two witnesses testified at trial. Officer F. Longoria, a patrol officer for the City of Liberty Police Department, testified that the complainant, T. Williams, came to the Liberty County Sheriff's Office early in the morning on October 11, 2012 to file a complaint involving the appellant's conduct. Longoria took pictures of Williams showing a cut on her lip and a scraped knee that were consistent with Williams's complaints and description of events. Williams voluntarily posed for the pictures of her injuries. Based on the information Longoria received from Williams, Longoria sought out appellant in his hotel room at the Liberty Inn. There, Williams also found evidence that was consistent with Williams's complaint, such as a hole in the sheetrock that looked freshly made because there were fragments of sheetrock on the floor directly beneath the hole. Pictures of Williams's injury and a picture of the hole in the sheetrock were admitted into evidence without objection.

When confronted by Longoria, appellant denied Williams's allegations. Believing Williams's account of the events to be supported by the physical evidence, however, Longoria arrested appellant.

2

Longoria then returned to talk to Williams to obtain a written statement and provide her with a notice to adult victims of family violence. Williams did not appear intoxicated to Longoria, and she "appear[ed] to have her wits and senses about her." Longoria witnessed Williams personally handwrite her statement about what happened, and Longoria signed the statement as a witness. He testified that he has had the opportunity to review statements written by intoxicated persons and, in his opinion, Williams was not intoxicated when she wrote her statement. The statement was clearly written, legible, and very cogent.

Williams next testified. She described appellant as her husband, "[n]ot by law," but "in [her] eyes." They live together as a family with one of his children and two of her children. She testified that she was intoxicated on October 11, 2012, and does not recall being with appellant at Liberty Inn that night. The last thing she remembers was being at a bar eating vodka-soaked cherries. She acknowledged that the written statement shown to her was in her handwriting and that she signed it, but she denied having any recollection of the events recited within that statement.

She further testified that she signed an "affidavit of non-prosecution" and another statement, which was admitted into evidence, averring that "I want it to be known that on the night in question when I filled out my statement at the police

3

department against Joseph Villyard I was intoxicated/under the influence of alcohol. I do not remember the events in question."

Williams admitted that she and appellant "occasionally get into physical scuffles," and that there are times that she has been the aggressor. According to Williams, she has a drinking problem and, sometimes when she drinks, she blacks out and can get aggressive.

## WILLIAMS'S WRITTEN STATEMENT

The State sought to introduce Williams's October 10, 2012 statement, and a hearing was held outside the jury's presence to discuss the various possible grounds for its admission or exclusion. Initially, the trial court sustained appellant's objections to its admission and told the State to establish a better predicate.

Williams then testified that she "did not recall" (1) meeting Longoria, (2) going to the sheriff's office, (3) being at the Liberty Inn, or (4) giving a statement. She acknowledged that the statement (1) was written completely by her in her handwriting, (2) was signed by her, (3) accurately reflected where she lived, and (4) accurately reflected her job at the time and her education level. She agreed that she "recorded the events that happened" but she does not "remember whether it happened or not."

4

The court then admitted the statement over appellant's objection that "it's improper impeachment evidence under Rule 613" and "improper hearsay under Rule 801 and under 803(5)." Williams then read the substantive portions for the jury:

> On or about 10-10 of 2012 I went to Liberty Inn Rm # 258 with Joseph Kevin Villyard. We ate Taco Bell. I laid down to go to sleep. When he got in bed [he] was being very rude, got out of bed and told me if I didn't like it to leave his house. I then went to the restroom. When I came out, he told me to leave his shirt, so I began to undress and put my clothes on to leave and he went crazy, shoving me so hard I went through the wall. I was kicking and screaming for him to just let me leave, which he would not let me. He kept shoving me onto the floor kicking me and hitting me. He busted my lip and I literally pissed my pants trying to get away from him. I got my cell phone and he took it and smashed it on the floor. I then tried to get [the] room phone to call 911 and he took that from me and shoved me down in between the bed and wall and was kicking me. It was not until I began banging on the wall for someone to help me that he opened the door to let me go. I went directly to sheriff's office after I left motel.

## THE JURY'S VERDICT AND TRIAL COURT'S JUDGMENT

The jury found appellant guilty of assault, and the court sentenced appellant to 180 days' confinement in county jail.

## ISSUES ON APPEAL

Appellant appeals his conviction here, raising four issues that all relate to the admission into evidence of Williams's prior written statement.

1. "The trial court erred by allowing the State to impeach the victim with the contents of her prior written statement."

5

2. "The trial court erred by admitting the victim's hearsay statements."

3. "The trial court erred by permitting the victim's prior written statement to be received as an exhibit and published to the jury."

4. "Given the inadmissibility of the victim's prior written statement, the remaining evidence was insufficient to support the jury's verdict."

The State contends that the trial court properly admitted the statement and, in any event, that there was sufficient other evidence to support appellant's conviction.

## ADMISSION OF WILLIAMS'S PRIOR STATEMENT

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules and principles—that is, whether the court acted arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). We must uphold the trial court's ruling so long as it is "within the zone of reasonable disagreement." *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

### A. Prior Inconsistent Statements

In his first point of error, appellant complains that Williams's written statement should not have been admitted as a prior inconsistent statement for

6

impeachment purposes. He reasons that Williams's professed memory loss is not inconsistent with her written statement.

The credibility of a witness may be attacked by any party, including the party calling the witness. TEX. R. EVID. 607. A party may impeach a witness with evidence of a prior inconsistent statement if the party first presents the witness with the existence of the statement, the details and circumstances surrounding the statement, and gives the witness the opportunity to explain or deny the statement. TEX. R. EVID. 613(a). "If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted." *Id.* "However, if the witness either denies or is unable to recall making the statement, the foundation for admission of the prior inconsistent statement is established." *Prince v. State*, 677 S.W.2d 181, 186 (Tex. App.—San Antonio 1984, no pet). "The rule of admissibility of evidence of prior inconsistent statements should be liberally construed and the trial judge should have discretion to receive any evidence which gives promise of exposing a falsehood." *Aranda v. State*, 736 S.W.2d 702, 707 (Tex. Crim. App. 1987).

Here, the State laid the proper predicate for admission of Williams's prior written statement, and Williams did not "unequivocally admit[]" to having made the statement. Instead, she repeatedly testified that she did not recall anything related to the statement. The Beaumont Court of Appeals has held a prior

statement to be properly admitted for impeachment purchases under similar facts.

In *Lowery v. State*, the defendant was accused of assaulting his common-law wife. No. 09-99-071-CR, 1999 WL 960992, at \*2 (Tex. App.—Beaumont Oct. 20, 1999, pet. ref'd) (not designated for publication). Although the complainant had given a statement to the police, at trial she repeatedly claimed to not remember what had happened and "explained that her lack of memory was the result of her heavy drinking that day." *Id*. at \*1. The trial court admitted her prior statement for impeachment purposes as a prior inconsistent statement over the objection of the appellant, and the court of appeals agreed that it was admissible:

> The State informed Phillips of the statement's contents, the time and place at which it was made, and the person to whom it was uttered. She was also given an opportunity to explain or deny the statement. When the prosecutor asked her during trial if the statement was truthful, she responded, "I don't know." When questioned about the statement's contents, she repeatedly replied that she did not remember making the statement, did not recall the event described in the statement, or could not say the contents of the statement were true and correct.
>
> In short, Phillips did not unequivocally admit to having made the statement. Therefore, based on the language of Rule 613(a), the trial judge did not err in admitting the statement for impeachment purposes only.

*Id*. at \*3–4; *see also McGary v. State*, 750 S.W.2d 782, 786 n.3 (Tex. Crim. App. 1988) ("Where the admission is only qualified or partial and not unequivocal the statement may be used to impeach."); *Staley v. State*, 888 S.W.2d 45, 49 (Tex. App.—Tyler 1994, no pet.) (holding that trial court's admitting prior statements for

impeachment purposes was not an abuse of discretion, as witnesses "did not admit their prior statements to police, nor did they unequivocally deny their prior statements"). We likewise hold that the trial court's admission of Williams's statement for impeachment purposes, in light of her professed memory loss and inability to admit or deny the substance of her prior written statement, was within the court's discretion. *E.g., Ruth v. State*, 167 S.W.3d 560, 566 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (prior statement was admissible for impeachment purposes because, "when questioned about the statement, [the witness] did not unequivocally admit making it; rather she claimed she could not remember"); *Lund v. State*, 366 S.W.3d 848, 852–53 (Tex. App.—Texarkana 2012, pet. ref'd) (prior statement was admissible for impeachment purposes because complainant claimed she could not remember incident discussed in statement because—at the time of the incident—she was "on medication that impaired her recollection"). We overrule appellant's first point of error.

## B. Hearsay

In appellant's second point of error, he argues that the trial court abused its discretion in admitting Williams's prior written statement in evidence over his hearsay objection. Even if a prior inconsistent statement is admitted, it may be used only for impeachment, not as substantive evidence, unless it otherwise falls

within an exception to the hearsay rule. *See e.g.*, *Miranda v. State*, 813 S.W.2d 724, 735 (Tex. App.—San Antonio 1991, pet. ref'd).

The party seeking to limit the purpose for which evidence can be considered, however, has the burden to request that the jury be given a limiting instruction. *Arana v. State*, 1 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see* TEX. R. EVID. 105(a) ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal."). "Once evidence is admitted without a proper limiting instruction, it becomes part of the general evidence in the case and may be considered for all purposes." *Arana*, 1 S.W.3d at 829 (citing *Garcia v. State,* 887 S.W.2d 862, 878 (Tex. Crim. App. 1994)).

Appellant did not request an instruction limiting the jury's consideration of Williams's written statement to impeachment. Accordingly, the jury could consider it for substantive purposes, irrespective of whether the State established an applicable hearsay exception. *Pardue v. State*, 252 S.W.3d 690, 698 (Tex. App.—Texarkana 2008, no pet.) ("Because [appellant] failed to request a limiting

10

instruction, [he] cannot now, on appeal, complain about the admission of the letter for all purposes.").  We overrule appellant's second point of error.

## C.    Other points of error

In his third point of error, appellant complains that the trial court erred by permitting Williams's "written statement to be received as an exhibit and published to the jury."  We overrule appellant's third point of error because we have already held that the exhibit was admitted for all purposes.

In his fourth point of error, appellant argues that, without Williams's written statement, there is insufficient evidence of appellant's guilt.  We overrule appellant's fourth point of error because we have already held that the jury could consider Williams's written statement as evidence of guilt.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).