**AFFIRM; and Opinion Filed December 5, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00964-CR

### DONALD HALL, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F12-59024-J**

## MEMORANDUM OPINION
Before Justices O'Neill, Lang-Miers, and Brown
Opinion by Justice Brown

Donald Hall appeals his conviction for the murder of Marlon Smith. A jury found appellant guilty and assessed his punishment at seventy-five years' imprisonment and a $10,000 fine. Appellant contends the trial court erred in admitting into evidence for all purposes a videotaped police interview with his mother. Alternatively, he contends his trial counsel was ineffective for failing to request a limiting instruction and make a rule 403 objection regarding this evidence. We affirm the trial court's judgment.

### BACKGROUND

Dallas Police Officer Aaron Tobkin testified that sometime after midnight on August 12, 2012, he was on an unrelated call at an apartment complex in the Pleasant Grove area when he heard several gunshots. He first heard four or five in rapid succession; then there was a pause followed by a single shot. Officer Tobkin got a call about the shooting and responded to a

nearby location on Lewiston Street. He saw the victim lying in an alley. The victim's cause of death was later determined to be a gunshot wound to the head.

Kaylan Busby testified that in the early morning hours of August 12, 2012, he was hanging out with the victim, who was his friend Marlon Smith, inside Smith's house on Lewiston. The victim convinced Busby to walk down the street to another house where a barbecue was taking place. A woman known as "Cookie"[1] approached the victim in the street to ask if he had any drugs. The victim told Cookie he didn't have any drugs, so Busby went to talk to her to see if he could help her out. Appellant approached Busby and asked what he was talking about. Busby had never seen appellant before and felt as if he had been challenged to a fight. Busby learned that Cookie was appellant's mother. Cookie was trying to keep appellant from "messing with" Busby. Appellant pulled a pistol out of his back pocket and began "cussing" at Busby. Busby turned and started running through a nearby yard to the alley. Appellant began shooting at Busby. Busby testified that appellant fired the gun at him more than four times and shot him once in the back of his left thigh. When Busby looked back to see where appellant was, he heard appellant fire one shot and saw the victim fall.

Busby testified that the day after he was shot, he went to the police station to speak to a detective about what had happened. Busby was shown some photographs. He said two of the pictures looked alike. After seeing appellant in the courtroom, Busby testified he had no doubt in his mind that appellant was the man who shot his friend. On cross-examination, defense counsel elicited testimony that Busby was shown a picture, Defense Exhibit 1, and had told police he was 100% sure that person was the shooter. Busby testified that Defense Exhibit 1 was

---

[1] Most of the people involved in or witness to this incident had nicknames and were referred to at trial by those nicknames. Busby was known as "South Dallas" or "South Side," and the victim Smith was known as "Four Side." Appellant's nickname was "Chub."

not a picture of appellant. On re-direct, Busby testified that he also picked appellant's picture out of the lineup. He thought two people in the lineup looked very similar.

On the night the victim was shot, Clifton Curtis was visiting a friend at a house on Lewiston. The house was a "dope house" and was set up with two surveillance cameras with views of the front and back of the house. The camera footage could be viewed on TVs inside the house, but was not recorded. Curtis testified that he saw a party going on in the street near Cookie's house. Curtis saw Cookie and appellant at the party. He knew them from the neighborhood. On the TV, Curtis saw and heard a conversation between Cookie, Busby, and the victim about drugs. Curtis testified that they were joking around, but when appellant walked up, arguing began. Appellant seemed angry. Curtis saw appellant pull a gun. He heard gunshots and saw Busby take off running. Then Curtis saw appellant shoot the victim and saw the victim hit the ground. When police spoke to Curtis that night, he denied seeing anything. But later he called Detective Steve David and went in to be interviewed. Curtis picked appellant out of a photo lineup.

About two weeks after the shootings, police found a 40-caliber semiautomatic handgun in an empty apartment. There was no evidence linking appellant to the apartment. Susan Allen, a firearms examiner with the Dallas Police Department, determined that this gun was the same weapon that fired bullets and shell casings found at the crime scene. Allen examined the bullet that was recovered during the victim's autopsy. She testified that it was a .40 caliber bullet, but was too damaged for her to identify the gun that had fired it.

The State called appellant's mother, Yolanda Hall or Cookie, as a witness, who said appellant sometimes stayed with her at her house on Lewiston. She testified that on the night of August 12, 2012, she had a barbecue at her house. She saw Busby and the victim walking down the street and went to ask Busby for some drugs. Appellant came over to check on her and "a

couple of words was passed." Hall testified that she tried to calm everybody down. She stated, "They both just start running, and I didn't see nothing. I covered my eyes and ran in my house."

Yolanda Hall gave two statements to Detective David about the shootings, one shortly after the crime on the morning of August 12, 2012, and another on September 21, 2012. At trial, the prosecutor asked Hall if she recalled stating in her second interview that when Busby started running down an alley, she saw her son with a gun. Hall testified that she didn't remember what she said in the interview. She claimed that she had been "full of drugs" and made the statements because she was nervous and scared. She testified at trial that she didn't see the shooting. The State asked Yolanda Hall if she remembered saying in her first interview with police that she was not at the barbecue when the shootings occurred because she left to help a relative with car trouble. Hall claimed to not remember making that statement either.

Detective David testified that he was called to the crime scene in the early morning hours of August 12, 2012. David testified that Hall did not answer her door on the night of the shooting, but he found her later and conducted two interviews with her. David also interviewed Busby and several others with information about the shootings. After these interviews, he identified appellant as the suspect. No other witness provided David with any information leading to any other potential suspect.

On September 5, 2012, with Yolanda Hall's consent, Detective David searched Hall's house. The detective found a nearly empty box of .40 caliber shells in a nightstand drawer in a bedroom.

Both of Detective David's interviews with Yolanda Hall took place at the police station and were recorded. According to David, he did not have any trouble communicating with Hall, and she did not appear high or intoxicated on either occasion. David identified State's Exhibits 67 and 68 as DVDs of the interviews he conducted with Yolanda Hall. They were admitted into

evidence over appellant's objection and played for the jury. In the first interview, given approximately twelve hours after the offense, Hall denied knowing what had happened. She told the detective that she left her house at about 11:30 pm to help her niece who had car trouble. David implored Hall to talk to him, but she said, "I can't tell you what happened." David gave Hall his card and said he hoped Hall would call and decide to tell him what happened.

The second interview took place on September 21, 2012, a little over a month after the shooting. When Detective David entered the interview room he indicated that had Hall called him. Hall told David, "I swear what I'm gonna tell you is the truth. . . . It's just hard." Hall described seeing the victim and Busby in the street and stopping Busby to buy drugs from him. Appellant walked up behind Hall and asked to see the crack she had bought. Apparently, appellant thought Busby didn't give Hall enough crack. Hall was in between Busby and appellant and tried to calm them down. Then Hall said, "I ain't gonna lie, I did see Don-Don [appellant] pull out the gun." Hall told David that she saw Busby start running and saw appellant run down the alley shooting at Busby. Hall then walked off and went in her house. She did not see appellant shoot the victim, but did see him shoot at Busby.

The defense called two witnesses, Tyrone Gillim and Baron Harell. Gillim testified that he was a friend of appellant's and was at the barbecue on the night the victim was shot. He testified that Yolanda Hall was a known crack user and was often high. At about 10:40 that night, Gillim witnessed an altercation between Busby and "some people." Busby fired three shots from a .380 into the air. Gillim took his girlfriend home and then returned. The victim was shot after Gillim returned to the barbecue. Gillim testified that he saw Busby walk up. He had the same .380 and pulled it out of his pocket. Gillim ran. He heard the shooting, but did not see it. According to Gillim, Yolanda Hall was not present when the shooting occurred. Harell,

appellant's cousin, also testified that Hall had a reputation as a crack addict. Harell went to the barbecue with Gillim. He testified that Hall was drinking at the barbecue.

During its deliberations on guilt/innocence, the jury asked for the video evidence of the September 2012 interview of Hall. The interview was played for the jury in its entirety, with some parts on mute. The jury found appellant guilty and assessed his punishment at seventy-five years' confinement and a $10,000 fine. This appeal followed.

## FAILURE TO GIVE LIMITING INSTRUCTION

In his first issue, appellant contends the trial court erred when it admitted for all purposes State's Exhibit 68, the DVD of Detective David's second interview with his mother and the detective's description of the DVD. Appellant asserts the court should have given a limiting instruction informing the jury that it could consider Hall's prior inconsistent statement as impeachment evidence only, not as substantive evidence. Because appellant did not request such an instruction, we conclude he may not complain on appeal of the court's failure to give one.

Shortly after Yolanda Hall testified and denied seeing anything, the State offered evidence that she had given a prior inconsistent statement to Detective David. When the State offered the DVDs of the interviews into evidence, the defense made the following objections:

> [DEFENSE COUNSEL]: We'd object on confrontation grounds, Crawford, and they're hearsay.

> THE COURT: This is the interviews of - - both interviews of Yolanda Hall?

> [PROSECUTOR]: Yes, ma'am.

> [DEFENSE COUNSEL]: And we'd also object under Rule 613 of evidence.

> THE COURT: Objection is overruled. State's Exhibits 67 and 68 are admitted.

> (State's Exhibit Nos. 67-68 admitted.)

> [DEFENSE COUNSEL]: And we'd also argue that they're not properly authenticated.

> THE COURT: Objection overruled.

The DVDs were played for the jury. As stated, the second time Yolanda Hall talked to the detective she said she saw her son pull out a gun and saw him shoot at Busby. Hall also said she ran off and did not see the victim get shot.

Rule of evidence 613 permits extrinsic evidence of a witness's prior inconsistent statement when certain requirements are met. TEX. R. EVID. 613(a). A witness's prior inconsistent statement is admissible for impeachment, but is not admissible as evidence of the truth of the matter asserted, unless a hearsay exception applies.[2] *Lund v. State*, 366 S.W.3d 848, 855 (Tex. App.—Texarkana 2012, pet. ref'd). Under rule of evidence 105, the parties have full responsibility for requesting appropriate limiting instructions:

> **(a) Limiting Instruction.** When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, *upon request*, shall instruct the jury accordingly; but, in the absence of such a request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

TEX. R. EVID. 105(a) (emphasis added); *Oursbourn v. State*, 259 S.W.3d 159, 170 n.80 (Tex. Crim. App. 2008). A trial court has no obligation to give a limiting instruction if a defendant does not request one at the time the evidence is offered. *See Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008); *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).

We do not agree with appellant's argument that his hearsay and rule 613 objections preserved this issue for our review. Under rule 105, it was appellant's responsibility to request a limiting instruction in this situation. Because he did not, this issue is not grounds for complaint on appeal. Appellant's first issue is without merit.

---

[2] The State does not argue that a hearsay exception applies to Hall's prior inconsistent statement.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, in his second issue, appellant contends that his trial counsel was ineffective for failing to request a limiting instruction in connection with State's Exhibit 68 and in failing to object to that exhibit under rule of evidence 403. Our record does not support appellant's claim.

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: 1) counsel's performance fell below an objective standard of reasonableness; and 2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). Appellate review of a claim of ineffective assistance of counsel must be highly deferential to trial counsel and presumes that counsel's actions fell within the wide range of reasonable assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and lacking in tactical or strategic decision making as to overcome this presumption. *Bone*, 77 S.W.3d at 833.

Texas courts have frequently stated that the decision to request a limiting instruction concerning the proper use of certain evidence may be a matter of trial strategy. *Delgado*, 235 S.W.3d at 250. It may be deliberate trial strategy to minimize the jury's recollection of the unfavorable evidence. *Id.* Here, counsel could have determined that a limiting instruction would have placed too much emphasis on Yolanda Hall's testimony. He could have chosen instead to use the fact that she gave three different versions of the event and question her reliability as a witness due to her drug and alcohol use. The cases cited by appellant to show ineffective assistance on direct appeal are distinguishable because in those cases the prior inconsistent statements were the only evidence of the defendants' guilt. *See Owens v. State*, 916 S.W.2d 713,

718–19 (Tex. App.—Waco 1996, no pet.); *Ramirez v. State*, 987 S.W.2d 938, 945–46 (Tex. App.—Austin 1999, no pet.). We conclude our record does not establish that counsel was ineffective for failing to request a limiting instruction. *See Bryant v. State*, 282 S.W.3d 156, 170 (Tex. App.—Texarkana 2009, pet. ref'd) (record did not support ineffective assistance claim where there were strategic reasons for failing to request limiting instruction); *cf. Ex parte Munsch*, No. AP-76094, 2009 WL 256505, at *1 (Tex. Crim. App. Feb. 4, 2009) (not designated for publication) (on habeas record in aggravated sexual assault case in which prior inconsistent statement was only evidence of penetration, counsel's failure to request limiting instruction amounted to ineffective assistance).

Appellant also contends counsel was ineffective for failing to object to State's Exhibit 68 under rule of evidence 403. He asserts that rule 403 required exclusion of the prior inconsistent statement in its entirety. Citing *Hughes v. State*, he argues that because the State had reason to believe Hall's testimony at trial would be different from her September 2012 statement, it called her as a witness for the primary purpose of getting inadmissible evidence before the jury. *See Hughes v. State*, 4 S.W.3d 1, 6–7 (Tex. Crim. App. 1999). As such, appellant maintains the prejudicial effect of the evidence substantially outweighed its probative value. *See* TEX. R. EVID. 403; *Hughes*, 4 S.W.3d at 7.

In *Hughes*, the defendant was charged with indecency with a child. The child's mother, who was married to the defendant, had told CPS workers the defendant admitted to her the allegations were true. *Hughes*, 4 S.W.3d at 3. At a pretrial hearing, the mother denied making any statements inculpating her husband to the case workers. The State called the mother as a witness at trial, and she again denied making the statements. The State then called the CPS workers who testified over a rule 403 objection that the mother told them the defendant had admitted the abuse to her. *Id.* The court of criminal appeals stated that the State's knowledge

–9–

that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible under rule 403. *Id.* at 5. The court went on to determine the trial court abused its discretion under rule 403 when it allowed the State to impeach the mother's testimony with her prior inconsistent statements. *Id.* at 7. It concluded that due to the highly prejudicial nature of the evidence, any probative value it had was substantially outweighed by its prejudicial effect. *Id.*

*Hughes* is distinguishable from appellant's case. First, *Hughes* was not an ineffective assistance of counsel case. Defense counsel made a rule 403 objection that the trial court overruled. While the court of criminal appeals determined the objection was meritorious, the case does not stand for the proposition that the failure to make such an objection amounts to ineffective assistance.

Second, had counsel made a 403 objection in this case, the probative value of the prior inconsistent statement would not have been substantially outweighed by its prejudicial effect. The State in *Hughes* had reason to suspect the mother would not testify differently at trial than she had pretrial and offered no reason why it expected her to change her testimony. *Id.* Here, nothing in the record indicates the State had reason to believe Hall would deny seeing her son with a gun. It appeared the State expected Hall to implicate appellant as she had in her most recent statement to police. During the direct examination of Hall, the prosecutor stated she knew Hall would "rather be anywhere else." Thereafter, Hall attempted to "plead the Fifth" so as to not testify against her son. Also, *Hughes* involved the defendant's confession coming in through a witness's prior inconsistent statement. The prior inconsistent statement was the only evidence the jury heard of the confession. In this case, the prior inconsistent statement was that appellant's mother saw him pull a gun and fire shots at Busby. Two other witnesses, Busby and Curtis, testified they saw appellant fire at Busby and shoot the victim. While we cannot deny the

–10–

impact of hearing a defendant's mother place a gun in her son's hand, this evidence was cumulative of other testimony. Further, Hall did not testify that appellant shot the victim. Given these significant factual differences, a 403 balancing test would have come out differently in this case. *See Kelly v. State*, 60 S.W.3d 299, 302 (Tex. App.—Dallas 2001, no pet.) (State's prior knowledge that witness would testify unfavorably is key). Defense counsel did not sit by and allow Hall's prior inconsistent statement to come in without any objection. He made four different objections to it and otherwise offered effective representation, attacking the credibility and reliability of the State's evidence. We cannot conclude that counsel's failure to make a rule 403 objection constituted deficient performance under the circumstances. Appellant's second issue lacks merit.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130964F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DONALD HALL, Appellant

No. 05-13-00964-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F12-59024-J.
Opinion delivered by Justice Brown. Justices
O'Neill and Lang-Miers participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 5th day of December, 2014.