ACCEPTED

№ 07-17-00324-CR

## IN THE COURT OF APPEALS

## FOR THE

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
5/30/2018 3:55:50 PM
VIVIAN LONG
CLERK

## SEVENTH JUDICIAL DISTRICT

## AMARILLO, TEXAS

_____

**MICHAEL CHASE JORDAN**
            **Appellant**

**VS.**

**STATE OF TEXAS**
            **Appellee**

_____

## APPEAL FROM THE 121ST DISTRICT COURT

## OF TERRY COUNTY, TEXAS

## CAUSE NO. 7152

## HONORABLE JOHN A. DIDWAY, JUDGE PRESIDING

_____

## STATE'S BRIEF

_____

**ORAL ARGUMENT NOT REQUESTED**

**LAURIE L. KEY**
**Terry County Attorney Pro Tem**
1213 Ave. K
Lubbock, Texas  79401
(806) 771-3933 – Phone
(806) 771-3935 – Facsimile
lauriekeylaw@gmail.com
State Bar № 24032624
Attorney for the State (Appellee)

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a)(1)(A), a complete list of the names and addresses of all parties to the trial court's judgment, and trial and appellate counsel, is provided so members of this Honorable Court may determine whether grounds for disqualification or recusal exist:

**APPELLANT**:   MICHAEL CHASE JORDAN
      TDC# 02141166
      J Middleton Unit
      13055 FM 3522
      Abilene, Texas 79601

**COUNSEL FOR APPELLANT AT TRIAL AND ON APPEAL**:
      PAUL E. MANSUR
      P.O. Box 1300
      Denver City, Texas 79323
      Email: paul@paulmansurlaw.com

**APPELLEE**:   THE STATE OF TEXAS

**COUNSEL FOR APPELLEE AT TRIAL AND ON APPEAL**:
      LAURIE L. KEY
      Terry County Attorney Pro Tem
      E-mail: lauriekeylaw@gmail.com
      1213 Ave. K
      Lubbock, Texas 79401

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... i

TABLE OF CONTENTS ..................................................................................... ii

INDEX OF AUTHORITIES .............................................................................. iii

ISSUES PRESENTED ........................................................................................1

STATEMENT OF FACTS ...................................................................................2

SUMMARY OF THE ARGUMENT ...................................................................7

ARGUMENT .......................................................................................................8

    **I.   Exclusion of Appellant's attempts to impeach Sergeant Valdonado was not an abuse of discretion.**...................................................................10

        a.  *Testimony presented by the State left no false impression before the jury, and Appellant's Due Process rights were not violated.* ....................................10

        b.  *Appellant did not properly impeach Sergeant Valdonado under Texas Rule of Evidence 613(a).* ....................................17

        c.  *Appellant was properly barred from impeaching Sergeant Valdonado with Valdonado's prior bad acts.* ....................................21

    **II.   Ruling that admission of Appellant's police interview video would open the door and allow the State to impeach Appellant's credibility was not an abuse of discretion.** ....................................25

PRAYER ............................................................................................................28

CERTIFICATE OF SERVICE ..........................................................................29

CERTIFICATE OF COMPLIANCE .................................................................29

# INDEX OF AUTHORITIES

**Cases**

*Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103 (1957) .......................................... 15,16

*Appling v. State*, 904 S.W.2d 912 (Tex. App.—Corpus Christi 1995, pet. ref'd)...27

*Aranda v. State*, 736 S.W.2d 702 (Tex. Crim. App. 1987).......................................17

*Bates v. State*, 587 S.W.2d 121 (Tex. Crim. App. 1979)..........................................11

*Bee v. State*, 974 S.W.2d 184 (Tex. App.—San Antonio 1998, no pet)..................27

*Cameron v. State*, 241 S.W.3d 15 (Tex. Crim. App. 2007).......................................8

*De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009)...................................9

*Ex parte Ghahremani*, 332 S.W.3d 470 (Tex. Crim. App. 2011) ...........................11

*Ex parte Robbins*, 360 S.W.3d 446 (Tex. Crim. App. 2011)............................. 10,11

*Flowers v. State*, 438 S.W.3d 96 (Tex. App.—Texarkana 2014, pet. ref'd)...........17

*Gerron v. State*, 524 S.W.3d 308 (Tex. App.—Waco 2016, pet ref'd)...................19

*Keller v. State*, 662 S.W.2d 362 (Tex. Crim. App. 1984)........................................11

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997)...........................................9

*Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239 (1946) ...........................9

*Lomas v. State*, No. 13-10-00242-CR, 2013 Tex. App. LEXIS 6866 (Tex. App.—
   Corpus Christi June 6, 2013) ..........................................................................24

*Lund v. State*, 366 S.W.3d 848 (Tex. App.—Texarkana 2012, no pet)..................17

*Macias v. State*, 136 S.W.3d 702 (Tex. App.—Texarkana 2004, no pet) ....... *passim*

*McGary v. State*, 750 S.W.2d 782 (Tex. Crim. App. 1988) ....................................17

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991) ..........................8,22

*Morales v. State*, 32 S.W.3d 862 (Tex. Crim. App. 2000) .........................................9

*Osbourn v. State*, 92 S.W.3d 531 (Tex. Crim. App. 2002)..........................................8

*Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002).............................................25

*Prescott v. State*, 744 S.W.2d 128 (Tex. Crim. App. 1988) .............................. 21,22

*Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999)............................................8

*Ramirez v. State*, 802 S.W.2d 674 (Tex. Crim. App. 2002) ....................................11

*Ramirez v. State*, No. 05-13-00608-CR, 2014 Tex. App. LEXIS 8144 (Tex. App.—Dallas July 28, 2014) ....................................................................................12

*Santellan v. State*, 939 S.W.2d 155 (Tex. Crim. App. 1997) .................................22

*Singletary v. State*, 509 S.W.2d 572 (Tex. Crim. App. 1974) ................................25

*Solomon v. State*, 49 S.W.3d 356 (Tex. Crim. App. 2001)........................................9

*Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008)........................................8

*United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392 (1976)...................................11

*Vasquez v. State*, 67 S.W.3d 229 (Tex. Crim. App. 2002) ......................................12

*White v. State*, No. 05-14-01359-CR, 2016 Tex. App. LEXIS 5555 (Tex. App.—Dallas May 25, 2016)................................................................................12

*Winegarner v. State*, 235 S.W.3d 787 (Tex. Crim. App. 2007) .............................22

**Statutes**

Tex. Code Crim. P. art. 38.22 .................................................................13

Tex. R. App. P. 39.1 ...............................................................................1

Tex. R. App. P. 44.2.................................................................................9

Tex. R. Evid. 401 ...................................................................................11

Tex. R. Evid. 402 ...................................................................................11

Tex. R. Evid. 403 ...................................................................................18

Tex. R. Evid. 404(b)...............................................................................22

Tex. R. Evid. 607 ...................................................................................10

Tex. R. Evid. 608(b)...............................................................................21

Tex. R. Evid. 609 .............................................................................. 10,21

Tex. R. Evid. 613 .......................................................................... 10,17,18

Tex. R. Evid. 801(e)(2) ..........................................................................26

Tex. R. Evid. 806 ............................................................................. 26, 27

## Statement on Oral Argument

Oral argument is not requested by Appellee, because the dispositive issues in this case have been authoritatively decided, the facts and legal arguments are adequately presented in the briefs and record, and the Court's decisional process would not be significantly aided by oral argument.[1]

## References to Reporter's and Clerk's Records

For the convenience of the Court, references to the Reporter's Record will be identified by Volume, Page, and Line in the following format: (RR 3:25;4). References to the Clerk's Record will be by Volume and Page in the following format: (CR 1;4).

## ISSUES PRESENTED

Whether the trial court abused its discretion by barring Appellant's attempts to introduce impeachment evidence against Sergeant Matthew Valdonado?

Whether the trial court abused its discretion by ruling admission of the Appellant's recorded police interview could open the door to impeachment of Appellant's credibility?

---

[1] *See* Tex. R. App. P. 39.1(b), (c), (d).

## STATEMENT OF FACTS

On June 23, 2016, Katie Carr and her sister, Jessica Avey, were outside in their parents' back yard, in Brownfield, Texas, when they saw Appellant ride by on a girl's bicycle.[2] That night, when Carr was at Avey's home, they noticed the girl's bicycle they had previously seen Appellant riding, on the ground outside Avey's residence.[3] They noted the presence of the girl's bicycle that did not belong to their family, and then noticed the absence of Avey's son's bicycle.[4] The next day, Carr observed Appellant in possession of her nephew's bicycle, so she notified Avey and their father, and the three went to confront Appellant.[5] The family were unsuccessful in convincing Appellant to return the boy's bike to them, so Avey called the Brownfield Police Department for help.[6]

Officers responded and located Appellant in the area described by Avey and Carr, in possession of the boy's bicycle that had been taken from Avey's yard.[7] Appellant lied to the officers regarding his identity.[8] After explaining the situation to Appellant, Officer Charles Forbes returned the bicycle to Avey and Carr.[9]

Carr and Avey began to recount the suspicious events surrounding the

---

[2] (RR 2:180;22-25); (RR 2:181;10); (RR 2:181;22-25); (RR 2:182;4-21); (RR 2:185;4-6).
[3] (RR 2:182;24-25); (RR 2:183;1-15); (RR 2:191;8-12,19-25); (RR 2:207;23-24).
[4] (RR 2:183;21-25); (RR 2:184;1-2); (RR 2:207;23-24).
[5] (RR 2:184;3-25); (RR 2:192;4-16); (RR 2:210;5-25).
[6] (RR 2:185;12-23); (RR 2:194;19-24); (RR 2:211;11-21).
[7] (RR 2:239;2-5,13-25); (RR 2:240;6-9); (RR 2:247;15-21); (RR 2:257;17-21); (RR 3:21;12-25).
[8] (RR 2:244;6-25); (RR 2:245;4-25); (RR 2:246;1-25); (RR 3:26;1-24).
[9] (RR 2:185;20-23); (RR 2:211;23-25), (RR 2:212;1); (RR 3:29;1-7).

2

children's bicycles to Officer Forbes.[10] Suddenly, Appellant appeared not far from their location[11] and both Avey and Carr identified him for the officer as being the man they'd seen that day and the day before with the stolen bicycle.[12] Officer Forbes detained Appellant at that time, and removed a "small, gray, blue, and black" camera bag from his person[13] before placing him in the back of the patrol car.[14] After Officer Forbes confirmed the bicycle Appellant had just been discovered riding did not belong to anyone at his address (1414 Cardwell), he transported Appellant to the police department to try to identify him and further investigation of the situation.[15]

After placing Appellant in one of the police department interrogation rooms,[16] Officer Forbes sought assistance from his patrol sergeant, Matthew Valdonado.[17] Sgt. Valdonado and Officer Forbes worked to try to establish Appellant's true identity,[18] amidst him giving two false social security numbers[19] and his persistence in providing the false identifying information he had previously supplied.[20]

Sgt. Valdonado testified that the area of the police department where

---

[10] (RR 3:30;22-25); (RR 3:31;1-24).
[11] (RR 3:108;1-5).
[12] (RR 2:186;1-5); (RR 2:196;20-25); (RR 2:197;1-3); (RR 2:212;1-8); (RR 2:214;6-25); (RR 2:215;1-8); (RR 3:32;3-19).
[13] (RR 2:199;2-3); (RR 2:201;1-5); (RR 2:215;18-23); (RR 2:216;1-6); (RR 3:33;10-14); (RR 3:34;1-9); (RR 3:111;16-23).
[14] (RR 3:36;4-10).
[15] (RR 3:38;16-25); (RR 3:39;1-15).
[16] (RR 3:39;16-19).
[17] (RR 3:39;19-21); (RR 3:161;1-4).
[18] (RR 3:41;1-4); (RR 3:161;5-13); (RR 3:164;1-17).
[19] (RR 3:41;14-17); (RR 3:165;5-25); (RR 3:166;1-6).
[20] (RR 3:164;18-25).

Appellant was that afternoon is limited in access—he even noted that "some of [the] dispatchers don't have that key to the back door."[21] Officer Forbes agreed that anyone in that area of the building "is wearing a badge or employed by the Brownfield Police Department," which does not make habit of "plant[ing] dope on suspects and/or their property."[22]

Sgt. Valdonado later testified on direct examination that he was aware of the camera bag Appellant possessed that day, but he did not look inside it.[23] He stated that Appellant's repeated lies about his identity and the source of the stolen bicycles heightened his suspicion about what was contained in the camera bag.[24] At some point, Officer Forbes asked Appellant if he would consent to the officer looking inside the camera bag he had in his possession; Appellant declined the request.[25] This heightened officers' suspicions even more.[26]

During his time with Appellant, Officer Forbes testified Appellant never denied ownership of the camera bag.[27] Sgt. Valdonado also pointed out that in his experience, it was not uncommon for people to deny consent to search property on the basis that "it's not mine, so I can't give you consent."[28] He noted that Appellant

---

[21] (RR 3:161;25); (RR 3:162;1-6).
[22] (RR 3:142;17-22).
[23] (RR 3:167;14-17).
[24] (RR 3:167;24-25); (RR 3:168;1-4); (RR 3:171;20-25); (RR 3:172;1-3).
[25] (RR 3:41;24-25); (RR 3:42;1-4); (RR 3:127;1-4).
[26] (RR 3:168;5-19).
[27] (RR 3:81;6-10); (RR 3:132;12-19).
[28] (RR 3:169;2-8).

4

never made those types of statements on June 24, 2016.[29] Ultimately, Officer Forbes placed Appellant under arrest for theft of the bicycle and failure to identify.[30] When Appellant was being booked into the Terry County Detention Center, an inventory was done of all his property, pursuant to jail policies.[31] As jailer Onesimo Garza began to inventory Appellant's property, the camera bag was accessed and individual items were removed from it.[32] Officer Forbes witnessed Deputy Garza remove suspected methamphetamine, a digital scale, and drug paraphernalia from the camera bag.[33] According to Deputy Garza, after he located the suspected methamphetamine, Appellant said "that case wasn't his," and "that's not mine."[34]

Officer Forbes then added the additional charge to Appellant's booking, for Possession of a Controlled Substance in Penalty Group 1, between one and four grams, namely, methamphetamine.[35] The suspected methamphetamine was transported to the Lubbock DPS Crime Laboratory,[36] where it was tested and confirmed to be methamphetamine,[37] with a weight of 2.77 grams.[38] When

---

[29] (RR 3:169;9-11).
[30] (RR 3:43;15-21).
[31] (RR 3:44;13-25); (RR 3:45;1-12); (RR 3:147;1-7); (RR 3:152;8-11).
[32] (RR 3:46;14-17); (RR 3:47;1-3); (RR 3:148;17-24).
[33] (RR 3:49;20-25); (RR 3:49;4-6,8-25); (RR 3:50;1-18); (RR 3:147;12-25); (RR 3:149;15-16); (RR 3:150;6-23).
[34] (RR 3:154;1-8).
[35] (RR 3:51;2-18); (RR 3:136;5-8).
[36] (RR 3:189;19-23).
[37] (RR 3:215;18-21).
[38] (RR 3:216;2-9).

Appellant was released from the Terry County Detention Center, he collected the camera bag from his property and took it with him when he left the facility, after having singled out a different item as **not** belonging to him.[39] Appellant was indicted on September 28, 2016 for Possession of a Controlled Substance, Penalty Group 1, between one and four grams.[40]

Prior to testifying, neither Officer Forbes nor Sgt. Valdonado viewed the recorded video interview they conducted with Appellant.[41] Both officers denied tampering with the camera bag in any way, and absolutely rejected the inference that either of them had "planted" the methamphetamine in Appellant's bag.[42] After being given the opportunity to refresh their recollections,[43] both officers testified again.

Officer Forbes clarified his testimony regarding the interview of Appellant: he agreed that in fact, Appellant had undergone some questioning before *Miranda* was issued;[44] and the camera bag was not placed in the briefing room upon his arrival at the police department—rather, it was with him for a longer time than he initially recalled.[45] Sgt. Valdonado also clarified his testimony regarding Appellant's interview: he acknowledged speaking with Officer Forbes prior to speaking with

---

[39] (RR 3:196;8-23); (RR 3:197;5-16).
[40] (CR 1;6).
[41] (RR 3:84;19-20,24-25); (RR 3:85;11-13); (RR 3:124;20-24).
[42] (RR 3:142;7-16,23-25); (RR 3:143;1-4); (RR 3:162;13-23).
[43] (RR 4:30;2-11); (RR 4:44;10-23).
[44] (RR 4:31;13-21).
[45] (RR 4:33;4-25); (RR 4:34;1-10).

Appellant;[46] he corrected the previous day's testimony by acknowledging Officer Forbes had mentioned something to him about the camera bag before the interview of Appellant began;[47] and he recalled conversing with Appellant regarding his identity and the bag prior to Appellant being *Mirandized*.[48]

## SUMMARY OF THE ARGUMENT

The trial court's rulings on evidentiary matters are given a significant amount of deference, because it is in the best position to decide questions of admissibility. Only when the trial court's rulings fall outside the zone of reasonable disagreement may they potentially be disturbed. Reversal is only warranted when Appellant's substantial rights are affected.

Appellant attempted to improperly impeach Sergeant Valdonado, but the trial court did not abuse its discretion in disallowing it. Sgt. Valdonado did not testify falsely or create a false impression for the jury. Appellant was not entitled to play the entirety of his video interview, and his right to due process was not violated. Appellant also failed to conduct a proper impeachment of Sgt. Valdonado's alleged prior inconsistent statements. Evidence of Sgt. Valdonado's prior bad acts was not admissible to impeach him because they were not being used for proper purposes under the Rules of Evidence, and he did not create a false impression before the jury

---

[46] (RR 4:46;1-12).
[47] (RR 4:46;13-19).
[48] (RR 4:47;1-15).

7

that would have warranted their admission to impeach him.

The trial court also correctly ruled that if Appellant admitted the video interview, which contained his self-serving statements regarding where he obtained the camera bag (and general denial of the bag being "his"), he would open the door to his credibility being impeached.

Because this Court is to uphold the trial court's rulings if they were correct under any theory of law applicable to the case, and because there are multiple theories of law which support the trial court's rulings in this case, this Court should deny all relief sought by Appellant and affirm his conviction.

## **ARGUMENT**

### Standard of Review

The review of a trial court's ruling on admission or exclusion of evidence is made for an abuse of discretion.[49] Because it is in the best position to decide questions of admissibility, the trial court's decisions are disturbed only when they are so clearly wrong as to fall outside the "zone of reasonable disagreement," or zone within which reasonable minds may differ.[50] A trial court does not abuse its discretion if any evidence supports its decision.[51] On appeal, the trial court's

---

[49] *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).
[50] *Montgomery*, 810 S.W.2d at 391; *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).
[51] *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

evidentiary ruling should be upheld if it was correct on any theory of law applicable to the case.[52]

If the Court finds error, it must then conduct a harm analysis to determine whether the error calls for reversal of the judgment.[53] Generally, so long as only the rules of evidence are offended, erroneous exclusion of evidence is a non-constitutional error governed by Texas Rule of Appellate Procedure 44.2(b).[54] Non-constitutional errors are to be disregarded, so long as they do not affect the substantial rights of the Appellant.[55] Substantial rights are affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[56] This analysis should include review of the record as a whole,[57] involving "any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case."[58]

---

[52] *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009).
[53] Tex. R. App. P. 44.2.
[54] *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).
[55] Tex. R. App. P. 44.2(b).
[56] *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997), citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946).
[57] *Kotteakos*, 328 U.S. at 764-65, 66 S. Ct. at 1248.
[58] *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

## I. Exclusion of Appellant's attempts to impeach Sergeant Valdonado was not an abuse of discretion.

Certainly, the credibility of any witness may be attacked by either party—but the attack must be made within the Rules of Evidence.[59] Impeachment of witness testimony commonly involves prior statements inconsistent with the current testimony, circumstances revealing bias, or that the witness has previously been convicted of a felony or crime of moral turpitude.[60] Appellant complains he suffered harm by the trial court's prohibition of his attempts to impeach Sgt. Valdonado in three areas: to correct his "false or materially misleading testimony,"[61] to confront him with prior inconsistent statements, and to impugn his credibility by eliciting facts regarding prior, unrelated bad acts.

a. *Testimony presented by the State left no false impression before the jury, and Appellant's Due Process rights were not violated.*

Testimony provided by a witness may be deemed "false" when a false impression of the facts is communicated.[62] Generally, this situation arises when "the witness omitted or glossed over **pertinent** facts."[63] The Due Process Clause of the Fourteenth Amendment can be implicated when false testimony is used by the State,

---

[59] *See* Tex. R. Evid. 607; *Macias v. State*, 136 S.W.3d 702, 704 (Tex. App.—Texarkana 2004, no pet).
[60] *Macias* at 704; citing Tex. R. Evid. 609(a), 613(a)-(b).
[61] Brief of Appellant at 3.
[62] *Ex parte Robbins*, 360 S.W.3d 446, 462 (Tex. Crim. App. 2011) (reh'g denied).
[63] *Id*. (emphasis added)

either knowingly or unknowingly, to obtain a conviction.[64] A false evidence claim is predicated in fundamental due process guarantees that the trial as a whole should be fair.[65] But "to constitute a due process violation, testimony used by the State must have been false, and it must have been material to the [Appellant's] conviction, meaning 'there is a reasonable likelihood that the false testimony could have affected the judgment of the jury.'"[66] Testimony which included improper suggestion, insinuation, and especially assertions of personal knowledge have been held to constitute "false testimony."[67]

Impeachment must be relevant, having some tendency to make the existence of any fact of consequence to the determination of Appellant's guilt more or less probable.[68] Generally, a witness may not be impeached regarding collateral matters.[69] A collateral matter is one which seeks only to test a witness's general credibility, or relates to facts which are irrelevant to the trial.[70] The test as to whether a particular matter is collateral is whether the cross-examining party would be entitled to prove it or rely on it as a part of his case, tending to establish his plea.[71]

---

[64] *Ex parte Robbins* at 459.
[65] *Id*. at 464.
[66] *Id*. at 459-60, quoting *United States v. Agurs*, 427 U.S. 97, 103-04, 96 S. Ct. 2392, 2397-98 (1976); and *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011).
[67] *Ex parte Robbins*, 360 S.W.3d at 460.
[68] *See Macias v. State*, 136 S.W.3d at 704, and *see* Tex. R. Evid. 401, 402.
[69] *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 2002).
[70] *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984).
[71] *Bates v. State*, 587 S.W.2d 121, 133 (Tex. Crim. App. 1979).

Simply because the State inquires on direct examination of a police officer about an interview conducted with the accused does not then make the video of the interview admissible.[72] The whole recording would be admissible only if necessary to prevent a false impression or to explain or make testimony understood.[73]

Here, Appellant claims Sgt. Valdonado's "false" testimony centers around three topics: the timing of the *Miranda* warning, questions asked of Appellant before *Miranda*, and the location of the camera bag during various phases of the interrogation. The matters raised by Appellant are collateral at best, and at worst are completely immaterial to Appellant's guilt of the offense for which he was convicted. Nothing in the record suggests that anything Valdonado testified to which might be arguably "false" was the result of anything other than a mistake or oversight.[74] Counsel for Appellant had the video before trial, fully cross examined Sgt. Valdonado using information he obtained from it, and chose not to impeach him with particular statements Sgt. Valdonado made on the video.[75] Additionally, though Appellant argues Valdonado provided grave mischaracterizations of what was contained on the video, he conveniently overlooks key corrections and

---

[72] *See White v. State*, No. 05-14-01359-CR, 2016 Tex. App. LEXIS 5555, at *4-5 (Tex. App.—Dallas May 25, 2016).
[73] *Id.* at *8.
[74] *See Ramirez v. State*, No. 05-13-00608-CR, 2014 Tex. App. LEXIS 8144, at *15 (Tex. App.—Dallas July 28, 2014); and *see* (RR 4:44;10-23) (Valdonado had not had access to view the video before providing his direct testimony).
[75] *See id.*, and *see Vasquez v. State*, 37 S.W.3d 229, 239 (Tex. Crim. App. 2002).

acknowledgments made by the witness after he had finally had a chance to review the video itself:

- That he **had** in fact asked Appellant questions prior to *Miranda*.[76]
- That he **was** aware of the bag before he began speaking with Appellant.[77]
- That he **did** recall having a conversation with Appellant regarding the camera bag, prior to *Miranda*.[78]

Whether Appellant was *Mirandized*, when that occurred, and which questions he was asked prior to *Miranda* being given are not material facts with any relevance to whether Appellant did in fact possess a controlled substance on June 24, 2016.  It should be noted that the Appellant did not claim at trial that any portion of his interview or statements to the police should be suppressed.[79]  No instruction was given to the jury regarding the Code of Criminal Procedure's prohibition against use of an involuntary statement against Appellant in its deliberations.[80]  He now makes the bold accusation that "Valdonado in fact violated [Appellant's] constitutional

---

[76] *Compare* (RR 4:46;24-25); (RR 4:47;1-10) *with* Brief for Appellant at 28 ("[Appellant] wanted the jury to see that Valdonado asked him questions about the bag and his reaction to [Appellant's] answers, all prior to giving the *Miranda* warning"), and at 31 ("The jury was deprived of learning that Valdonado in fact violated [Appellant's] constitutional rights by questioning him prior to administering the *Miranda* warning.").

[77] *Compare* (RR 4:46;13-19) *with* Brief for Appellant at 18-19 ("Valdonado insisted that he did not interrogate [Appellant] on any matter, other than his identity, prior to the *Miranda* warning.").

[78] *Compare* (RR 4:47;11-14) *with* Brief for Appellant at 18-19, 24 ("When Valdonado was asked whether he interrogated [Appellant] about the camera bag prior to the *Miranda* warning, he persisted in his assertions that he only asked questions about [Appellant's] identity.").

[79] *See* (CR 14;25-39).

[80] (CR 33;91-94); and *see* Tex. Code Crim. P. art. 38.22 §6.

rights by questioning him prior to administering the *Miranda* warning," but he fails to make a cognizable claim on appeal.[81]

Neither did Appellant argue to the jury that anything gleaned from the police interview with Appellant was improper – he focused in his argument on the fact that Appellant repeatedly denied the camera bag was his.[82]   Appellant gives no explanation as to, and fails to expound on, how his being barred from bearing out of any of these facts substantially harmed him, or if it affected the jury's verdict at all. Even if Sgt. Valdonado's testimony is deemed to have created a false impression with the jury, and even if Appellant had been allowed to clear up the alleged false impression created by Valdonado regarding the timing of the *Miranda* warning, and what was asked of Appellant before it was issued, those matters being proved do not change the facts the jury relied on in convicting him.

Here, Appellant was charged and convicted of possessing between one and four grams of methamphetamine.[83]   Uncontroverted evidence proved that when Appellant was detained by Officer Forbes outside of the house on Buckley, he was in possession of the camera bag.[84]   At trial, Appellant tried to insinuate misconduct on the part of either or both Officer Forbes and Sgt. Valdonado, but never produced

---

[81] Brief of Appellant at 30.
[82] (RR 4:77;23-25); (RR 4:78;2-6).
[83] (CR 1;6); (CR 36;97-99).
[84] (RR 2:198;23-25); (RR 2:199;1-3); (RR 2:201;1-7); (RR 2:215;18-22); (RR 2:216;1-6); (RR 3:34;6-9); (RR 3:75;1-11).

any proof aside from accusations.[85]  Even if Appellant had been able to correct the alleged false impression left by Sgt. Valdonado's testimony regarding the location of the camera bag after Appellant was brought back to the police department, nothing changes the facts the jury relied on in reaching their verdict.  Appellant alone possessed the camera bag when he was detained on Buckley.[86]  Appellant alone worked to prevent officers from identifying who he was[87] and what was contained in the bag.[88]  And Appellant alone possessed methamphetamine that day.  He offers no explanation on appeal to articulate how clarification of where the bag was exactly at various points of his interview with officers mattered at all to the jury's verdict.

To compare, in *Alcorta v. Texas*, a murder case, the defendant claimed he murdered his wife when he came home to find her being intimate with another man.[89]  The man, who was the only eye-witness to the murder, testified that he merely had a casual friendship with the wife—and nothing past that.[90]  The Supreme Court held that the man's testimony was false and created a false impression of the facts, because after Alcorta's conviction, the man filed a sworn statement admitting he was the wife's "lover and paramour," who shared an intimate physical

---

[85] *See* (RR 4:74;13-23); (RR 4:76;1-19); (RR 4:77;10-25).
[86] (RR 2:198;23-25); (RR 2:199;1-3); (RR 2:201;1-7); (RR 2:215;18-22); (RR 2:216;1-6); (RR 3:34;6-9); (RR 3:75;1-11).
[87] (RR 3:163;22) to (RR 3:166;17).
[88] (RR 3:127;1-4).
[89] *Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103 (1957).
[90] *Id*. at 29.

15

relationship with the wife on many occasions.[91]  A material fact in Alcorta's trial, and in the defensive theory of the case, was his motive in committing the murder.[92] Because the jury in his case had been left with the false impression created by the witness, there had been a substantial effect on the jury's verdict that affected Alcorta's access to due process of law.[93]  Without correction of the false impression, the jury had been left without a reason for him to have committed the act.[94]

When we examine the record and bear out whether Appellant suffered harm by not being allowed to correct what he maintains were false impressions left by Sgt. Valdonado,[95] it becomes apparent that the facts he claims were material had no substantial effect on the jury's verdict.  Unlike in *Alcorta*, where the false testimony had a direct and substantial impact on the crime for which Alcorta was convicted, as well as the punishment assessed against him, nothing about when *Miranda* was issued, what was asked before that occurred, or where the camera bag was inside the police department during his interview have any bearing on the jury finding Appellant guilty of possessing the methamphetamines later found inside the bag.

---

[91] *Alcorta* at 30-32.

[92] *Id*. at 28-29 (explaining that at the time, in Texas, Alcorta would have been eligible for a maximum sentence of five years' incarceration, had the jury found he committed the murder under influence of sudden passion arising from adequate cause—his jury had found him guilty of committing the murder with malice and sentenced him to death).

[93] *Id*. at 31-32.

[94] *See id*.

[95] But *see* (RR 4:20;13-17) ("I mean, the way that these officers have testified previously, it's not false, but it leaves the jury with a false impression about where this camera case is going, when the *Miranda* warnings are given, and those sorts of things.").

The trial court did not abuse its discretion in disallowing admission of the entire video for purposes of correcting the "false impression," which was not even material to the case, and it certainly did not harm Appellant by affecting the jury's verdict. The trial court's ruling should be sustained.

b. *Appellant did not properly impeach Sergeant Valdonado under Texas Rule of Evidence 613(a).*

To properly impeach a witness under Rule 613(a), a party must (1) establish the identity of the statement (by time, place, and person), (2) provide a summary of the statement's contents, and (3) the witness must not unequivocally admit what the statement contains.[96] The witness is not absolutely required to deny the statement, but extraneous evidence may not be admitted if the witness unequivocally admits having made it.[97] Where an admission is only qualified or partial, and not unequivocal, the prior statement may be used to impeach.[98] "The rule of admissibility of evidence of prior inconsistent statements should be liberally construed and the trial judge should have discretion to receive any evidence which gives promise of exposing falsehood."[99]

Here, these foundational requirements were not met by Appellant sufficient to accomplish his goal of admitting the entirety of the video interview. Before the

---

[96] *Lund v. State*, 366 S.W.3d 848, 854 (Tex. App.—Texarkana 2012, no pet); Tex. R. Evid. 613(a).
[97] *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd).
[98] *Id.*, citing *McGary v. State*, 750 S.W.2d 782, 786 n.3 (Tex. Crim. App. 1988).
[99] *Lund v. State*, 366 S.W.3d at 854, citing *Aranda v. State*, 736 S.W.2d 702, 707 (Tex. Crim. App. 1987).

17

entire content of Sgt. Valdonado's statements contained on the video would be admissible under 613(a), Sgt. Valdonado would have had to unequivocally or partially deny each one of the statements he made on the recording. Even still, that would only make **his** statements (Sgt. Valdonado's) admissible as extrinsic evidence to impeach **him**.[100]

While counsel did identify the statement,[101] and Sgt. Valdonado was permitted to view it one time (after he had been subject to direct examination),[102] the record shows counsel for Appellant never fully pursued impeachment under 613(a). He never actually attempted to introduce extrinsic proof of the statements he claimed were inconsistent with Valdonado's in-court testimony.

On direct, the State did not inquire as to the nature of pre-*Miranda* conversation with Appellant, when Sgt. Valdonado referenced the camera bag, or whether Appellant told Sgt. Valdonado why he was in possession of the bag, but counsel for Appellant asked about these subjects and more during his reserved cross examination of the witness.[103] Contrary to what Appellant claims in his brief, Sgt. Valdonado did **not** deny all of counsel for Appellant's claims about what was contained in the "horrible,"[104] at times "virtually inaudible"[105] quality recording he

---

[100] *See* Tex. R. Evid. 613(a)(4).
[101] (RR 4:44;17-23).
[102] (RR 4:44;19).
[103] (RR 4:47;2-7); (RR 4:47;11-17); (RR 4:47;20-22).
[104] (RR 4:16;5-6).
[105] (RR 4;16;8-9).

sought to admit.[106]  Instead, he primarily made unequivocal admissions,[107] along

with several partial or qualified admissions,[108] and at least one unequivocal denial.[109]

Here, Appellant attempts to persuade the Court that the trial court arbitrarily,

and without reason prevented him from admitting and playing the contents of his

video interview with Brownfield police.  He glosses over the comments made by the

trial court regarding potential proper use of the video:

- "You can obviously use it to refresh his memory at any time, whether it's in evidence or not."[110]
- "You can impeach the officers with the video [ . . . ], if you wish to do so."[111]
- "I think you're entitled to impeach any witness with a video if they made misstatements, did not state something correctly with the time frame.  I believe you can impeach them with the portions of the video that show that."[112]

---

[106] *See also* Tex. R. Evid. 403, and *Gerron v. State*, 524 S.W.3d 308, 321 (Tex. App.—Waco 2016, pet ref'd) ("[P]robative value refers to the inherent probative force of an item of evidence – that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation – coupled with the proponent's need for that item of evidence.").

[107] *See* (RR 4:46;24-25); (RR 4:47;1-5) (admitted he asked Appellant questions prior to *Miranda*); (RR 4:46;24-25); (RR 4:47;1) (recalled conversation with Appellant about the camera bag); (RR 4:47;2-5) (**did** discuss the camera bag with Appellant prior to *Miranda*); (RR 4:47;23-25); (RR 4:48;1) (left the room after initial discussion with Appellant, to discuss case further with Forbes).

[108] *See* (RR 4:46;16-19) (believed there was mention of the camera bag before entering the interview room the first time); (RR 4;47;11-14) (believed he mentioned the camera bag in initial conversation with Appellant); (RR 4:47;15-17) (did not recall when he asked Appellant where the bag came from); (RR 4:47;20-22) (did not believe Appellant gave explanation of where the bag came from).

[109] *See* (RR 4:49;14-18) (disagreeing with the characterization that he sought the same type of information from Appellant before and after *Miranda*).

[110] (RR 3:176;12-14).

[111] (RR 4:20;18-20).

[112] (RR 4:28;11-15).

Instead of properly impeaching Officer Forbes or Sgt. Valdonado under Rule 613(a) during examination, counsel for Appellant said, "I'll tell you what. Since the audio is so horrible, I'll just withdraw the exhibit and ask my questions of this witness."[113]  Counsel proceeded to fully cross examine Officer Forbes, who apparently sufficiently corrected his recollections/testimony for Appellant's liking, after being allowed to view the video. But since Sgt. Valdonado did not agree with all of counsel's characterizations of the interview of Appellant, Appellant made a bill of review and now argues he should have an opportunity to try again.

Throughout his brief, Appellant makes conclusory statements that he was harmed by not being allowed to impeach Sgt. Valdonado with his prior inconsistent statements. The basis for his argument appears to be that (1) he dislikes the inference Valdonado made, between Appellant telling police they needed a search warrant before they could search the camera bag, and that being indicative of Appellant's ownership of the bag;[114] and (2) he wanted to show the jurors that the pre-*Miranda* interview of Appellant was much more adversarial than Valdonado would admit.[115]

Appellant should not now reap the benefit of having a second chance at the expense of blaming the trial court. He could have properly impeached Sgt. Valdonado under Rule 613(a), had he asked to do what the judge suggested: impeach

[113](RR 4:28;16-25).
[114] Brief of Appellant at 27-28.
[115] *Id*. at 28.

20

with the portions of the video that showed the witness's testimony misstated or made inconsistent statements compared to what was contained on the video. He made no attempts to do anything besides offer the entirety of the video interview, which is not permitted under 613(a).

Because the trial court did not act outside the zone of reasonable disagreement, and because counsel for Appellant has failed to show that he was harmed by not being allowed to impeach Sgt. Valdonado's alleged prior inconsistent statements, the trial court's ruling should be sustained.

c. *Appellant was properly barred from impeaching Sergeant Valdonado with Valdonado's prior bad acts.*

Except for criminal convictions which may be used to impeach a witness (pursuant to Rule 609), no party may inquire into or offer extrinsic evidence to prove specific instances of a witness's conduct in order to attack the witness's character for truthfulness.[116] The Rules of Evidence serve as a strict gatekeeper, limiting use of prior criminal convictions against a testifying witness.[117] But if the witness's testimony has created a false impression as to his prior arrests, convictions, charges, or trouble with the police, an exception exists which makes those otherwise inadmissible facts fodder for proper impeachment of the witness.[118]

---

[116] Tex. R. Evid. 608(b).
[117] *See* Tex. R. Evid. 609.
[118] *Macias v. State*, 136 S.W.3d at 705, citing *Prescott v. State*, 744 S.W.2d 128, 130-31 (Tex. Crim. App. 1988).

When a witness makes a blanket assertion of fact that leaves a false impression with respect to his prior behavior, he opens the door on his otherwise irrelevant past criminal history, and he may be impeached by opposing counsel exposing the falsehood.[119]  The exception does not extend to **any and all** false impressions that might be left by a witness, and considered "false" by the party allegedly adversely affected.[120]  Rather, the witness must have specifically left a false impression regarding his prior arrests, convictions, charges, or trouble with the police in order to warrant impeachment by admission of those facts.[121]

Evidence of other crimes, wrongs, or acts is admissible if it has relevance apart from its tendency to prove the character of a person, in order to show he acted in conformity therewith on a particular occasion.[122]  If the opponent of the evidence objects, the proponent must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value.[123]  Under Rule 404(b), there is no permissible purpose for offering the evidence of Sgt. Valdonado's prior criminal activity against him.[124]  Appellant cannot show that anything related to the admission Sgt. Valdonado made in a previous court proceeding, nearly seven

---

[119] *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).
[120] *Macias* at 705.
[121] *Id*., citing *Prescott* at 131.
[122] *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990); and *see* Tex. R. Evid. 404(b).
[123] *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997)
[124] *See* Tex. R. Evid. 404(b)(2).

years prior to his testimony against Appellant,[125] regarding his prior bad acts, has anything to do with any permissible purposes for this evidence being admitted under 404(b)(2). Appellant has to try to convince the Court the false impression exception applies to Sgt. Valdonado's testimony—otherwise, the Rules prohibit any use of the witness's prior bad acts against him.

Under Rule 608(b), Appellant was barred from using any specific instances of Sgt. Valdonado's conduct to impeach him, unless it was done to correct a false impression Valdonado left before the jury.[126] So, he argues that Sgt. Valdonado's testimony on direct examination left a false impression before the jury regarding his "integrity and credibility."[127] Sgt. Valdonado testified on direct that he did not plant drugs in Appellant's bag;[128] that if he had, he would risk losing his job, his career, and his credibility;[129] and that in his opinion, any police officer who tampered with evidence in the manner Appellant had suggested would risk jail time and a loss of his peace officer's certification.[130]

Appellant claims that Sgt. Valdonado's testimony created a false impression that he would lose his job and his credibility if he engaged in police misconduct, and therefore, Appellant should have been able to correct the "false impression" by

---

[125] (RR 3:173;12-25).
[126] *See Macias v. State* at 705.
[127] Brief of Appellant at 33; (RR 3:172;18-20).
[128] (RR 3:162;17-18).
[129] (RR 3:162;19-21).
[130] (RR 3:162;24-25); (RR 3:163;1-3).

23

introducing evidence of Valdonado's admission of previously selling and using marijuana. But as the trial court pointed out, Appellant did not even know when or on how many occasions these prior bad acts of Sgt. Valdonado had taken place.[131] The record is silent as to whether these prior bad acts even occurred while Sgt. Valdonado was a police officer. Neither the State nor the witness **ever** said Sgt. Valdonado had "never engaged in criminal acts in his past"; no one insinuated or stated that he had a "spotless" record, either.[132] Therefore, the door to any prior misconduct on his part was not opened.

Appellant articulates no harm he allegedly suffered by exclusion of this evidence.[133] It can hardly be said the trial judge's decision regarding Sgt. Valdonado's prior bad acts falls outside the zone of reasonable disagreement. The trial court did not summarily deny Appellant's request to go into the matter in impeaching Sgt. Valdonado.[134] Instead, the court dismissed the jury, as counsel for Appellant requested, and allowed counsel to explain and inquire about what he thought to be a viable avenue for impeachment of Sgt. Valdonado.[135] The court even questioned whether the proposed impeachment testimony might fall under Rule 609,

---

[131] (RR 3:173;22-25); (RR 3:174;1).
[132] *See Lomas v. State*, No. 13-10-00242-CR, 2013 Tex. App. LEXIS 6866, at *40 (Tex. App.—Corpus Christi June 6, 2013).
[133] *See* Brief of Appellant at 33-34.
[134] *See* (RR 3:172;5-25).
[135] (RR 3:172;18-25); (RR 3:173;1-6).

24

by its further questioning of counsel for Appellant.[136]  After exploring all possibly permissible uses for the impeachment evidence, the court decided it was not admissible.  This Court must sustain that decision.

## II. Ruling that admission of Appellant's police interview video would open the door and allow the State to impeach Appellant's credibility was not an abuse of discretion.

Generally, a defendant's self-serving statements made out of court are inadmissible unless they meet limited exceptions.[137]  Unless part of the statement has previously been offered by the State, the statement is necessary to explain or contradict acts or declarations first offered by the State, or when the accused's self-serving declaration was res gestae of the offense or arrest, it is not admissible.[138] The Appellant maintains no general right to present favorable evidence.[139] Constitutional error does not automatically exist simply because Appellant was unable to present his case to the extent and in the form desired, so long as he was not prevented from presenting the substance of his defense to the jury.[140]

In any case, when a hearsay statement is admitted in evidence, the declarant's credibility may be attacked by "any evidence that would be admissible for those

---

[136] (RR 3:173;12-25); (RR (3:174;1).
[137] *Singletary v. State*, 509 S.W.2d 572, 576 (Tex. Crim. App. 1974).
[138] *Id*.
[139] *See Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002).
[140] *Id*. at  at 666.

purposes if the declarant had testified as a witness."[141] The court may admit evidence of the declarant's conduct, offered to impeach him, regardless of when it occurred or whether he has had an opportunity to explain or deny it.[142]

The State did not offer the video in presentation of its case in chief, for various reasons.[143] Had the State offered the video, it would have been admissible under the Rules of Evidence, at least as to Appellant's statements.[144] But since Appellant was the proponent of the video, which did contain self-serving statements of Appellant,[145] the trial court appropriately assessed that Rule 806 would (or could) apply, had the video been offered and admitted.

Here, the trial court made the following comments on the record, regarding its ruling that if Appellant sought admission of the video interview the State could potentially then impeach Appellant's credibility:

- "Is there any statements on the video where he denies possession or denies that it was his?"[146] (sic)
- "Okay, here's the way I see it. If there's statements on the audio that you're introducing or your client's giving statements from where he obtained it from or denying possession of it, then I'm going to allow the State to introduce items that would be relevant to credibility. That doesn't necessarily mean every conviction or

---

[141] Tex. R. Evid. 806.
[142] *Id.*
[143] (RR 3:84;12-25); (RR 4:24;8-23).
[144] *See* Tex. R. Evid. 801(e)(2).
[145] (RR 4:25;3-18); (RR 4:36;2-20).
[146] (RR 4:24;24-25); (RR 4:25;1)

26

every offense. It's those that go towards credibility."[147]

- "The difference is you're putting your client on through a video of statements made to the police. Therefore I think it does open up his credibility at that point in time. You're proffering the evidence, not the State. If it's just the fact that he's been to the pen or been arrested, I'm not going to allow the State to introduce anything that's basically not testimony. It's just the testimony that denied [possession of the camera bag]."[148]

As the State argued, were the Appellant's hearsay statements admitted, they could act as the equivalent of a statement made on the stand; therefore, his statements would be subject to impeachment and rehabilitation just as his testimony would.[149] When the accused opens the door regarding his own credibility, the State may then impeach it just as if he had testified.[150]

Even though the court never specifically cited to Rule 806, clearly, the court's ruling is well-founded in it. And despite the fact that the rule actually provides **more** latitude in terms of what is admissible to attack a declarant's credibility,[151] the trial court in this case indicated its intent to limit the State's planned impeachment of the

---

[147] (RR 4:26;21-25); (RR 4:27,1-7).

[148] *Compare* (RR 4:27;15-25) *with* Brief of Appellant at 24 ("[T]he trial court abused its discretion when it ruled that [Appellant] would open up his entire criminal background if he impeached Valdonado with the portions of the video that demonstrated that Valdonado was testifying falsely.").

[149] *See Bee v. State*, 974 S.W.2d 184, 190 (Tex. App.—San Antonio 1998, no pet).

[150] *See Appling v. State*, 904 S.W.2d 912, 916-17 (Tex. App.—Corpus Christi 1995, pet. ref'd).

[151] Tex. R. Evid. 806 ("any evidence" is admissible to attack a declarant's credibility, "regardless of when it occurred or whether declarant had an opportunity to explain or deny it").

Appellant to that which would be admissible under Rule 609.[152]  Given the existence of Rule 806, and the fact that the trial judge here correctly noted it would apply if counsel for Appellant sought admission of the entirety of the video interview (which included Appellant's statements), the trial court did not abuse its discretion, and Appellant has failed to meet his burden on this point.  The Court should sustain the trial court's ruling.

## **PRAYER**

For the foregoing reasons, the State prays the Court of Appeals affirm the decisions to exclude evidence made by the trial court, and sustain the judgment of conviction in this case.

---

[152] (RR 4:26;21-25); (RR4:27;1-4,22-25).

Respectfully submitted:

_____
*LAURIE L. KEY*
TERRY COUNTY ATTORNEY
PRO TEM

1213 Ave. K
Lubbock, Texas  79401
(806) 771-3933 – Phone
(806) 771-3935 – Facsimile
lauriekeylaw@gmail.com
State Bar № 24032624
Attorney for the State

## CERTIFICATE OF SERVICE

By my signature above, I certify that, pursuant to Tex. R. App. P. 9.5, a true and correct copy of Appellee's Brief has been served upon Appellant by and through his attorney of record on appeal, Paul E. Mansur, Attorney at Law, by e-mail and inclusion via electronic filing on this, the 30th day of May, 2018.

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), I certify that this document was produced on a computer using Microsoft Word 2013 and contains 8,182 words, as determined by the computer software's word-count function, excluding the sections of the document specified in Tex. R. App. P. 9.4(i)(1).

_____
Laurie L. Key
Counsel for the State